# DECISIONS

OF

# THE COURT OF APPEALS

## OF KENTUCKY.

### SUMMER TERM, 1857.

Jackson *vs.* Robinson.

Case 1.

APPEAL FROM WARREN CIRCUIT.

CASE.

1. Bailee in possession of property for joint profit and advantage of himself and bailor, in case of injury or destruction thereof, is not responsible therefor because he did not take as *good care*, and observe *as much diligence*, as would be taken or observed *commonly* by *prudent* men; such bailee is only bound to use such care and diligence as is usual with the common run of men, or with men of *ordinary discretion* in the use of their own property, *aliter*, when the possession was for the *exclusive advantage* of bailee.

[This case was decided at the Winter Term, 1852, but was accidently omitted in the published decisions of that Term.—REP.]

[The facts of the case appear in the opinion of the court.] REP.

*W. L. Underwood* for appellant—

Argued—The demurrer ought to have been sustained to each count of the plaintiff's declaration. To the first count, because it is uncertain as to the person of whom the defendant *farmed* the Jack in controversy; because it is not therein alledged that plaintiff had possession, or the right to possession, of the Jack; because the nature, meaning, and definition of the term *farming*, which the court does not judicially know, is not described, although it is assum-

ed to import a contract. To the second, because it sets out a mere naked bailment of plaintiff's Jack, without contract or consiedration, and that the Jack received injuries, and was killed under circumstances, which do not, in law, render the defendant liable for damages therefor.

The instructions of the inferior court were erroneous, inasmuch as under the naked bailment alledged in the second count of plaintiff's declaration, the defendant was not bound to bestow on the Jack such care, management, and attention as a prudent man, ordinarily, in the management of his affairs, would have bestowed. Nor is it sufficient that plaintiff proved a consideration for the bailment, as none is averred. Admitting, however, that the defendant hired the Jack of the plaintiff, he was only bound to treat the Jack as carefully *as any man of common discretion would treat his own Jack. Jones' Bailment* 88 *;* which doctrine is approved by Chancellor Kent, see *Com. vol.* 2, *p.* 586, wherein the rule is further stated to be, that "the hirer is bound to ordinary care and diligence, and is answerable only for ordinary neglect— for this species of hiring, *locatio rei,* is one of mutual benefit." The settled measure of care, as well as of neglect, is transcended by the instructions of the circuit judge in this case, inasmuch as they require such care as a *prudent man* would bestow, whereas the authorities cited only require *ordinary care and diligence.* The instructions require the care and diligence which would be bestowed by a certain sort of man, that is, a *prudent* man, whereas the rule, as laid down by Sir W. Jones and Chancellor Kent, *supra,* only requires *ordinary* care and diligence, such as the *generality* of men would be likely to observe.

The application of the principle contained in the instructions of the court below, to the evidence detailed, constrained the jury to find a verdict against the defendant, for damages resulting from an act which men of *ordinary care and diligence* would have done, and a *prudent* man might have done. The

evidence shows that the defendant, having occasion to stop at a house near the road along which he was traveling with the Jack, tied him to the limb of a tree in a lot where there were no other horses, some yards distant from the roads on either side, not much frequented, went into the house, and after remaining a few moments came out and found the Jack dead, no doubt from injuries received by rearing and falling. The evidence further shows, that for a long time before that time the Jack was remarkably gentle and docile in his disposition, had stood gently when tied at mills and musters, in the immediate company of other horses, had been before tied to trees and stood gently, had been stabled with other horses without being separated or kept apart by poles or other thing, had been allowed to run loose in a lot where a stallion served mares, and could be then kept away by a little boy, and that all this was known to the appellant.

Upon this evidence we think no jury could have hesitated to say that the defendant was not liable for damages, if not mislead by the instructions of the court. The instructions of the court require the jury to determine whether an absolutely *prudent man* would have *ordinarily* tied his Jack to the tree under the circumstances proved in this case, and not whether men of *ordinary care and deligence* would have so tied him. The instructions use the word *ordinarily* to qualify the *act* and not the quality of the man; by it, the jury must first determine whether a *prudent* man would have so acted or not, and then would he have *ordinarily* so acted.

We are clearly of opinion that the jury were mislead by the error contained in the instruction of the circuit judge, and that a new trial should have been awarded. Wherefore a reversal is respectfully asked.

*J. C. Wilkins* on same side—

Argued—Regarding the bailment as one for hire, (which is by no means admitted,) then, as both parties are to be benefited, neither the highest or lowest

degree of care and diligence was required of the bailee. " Ordinary negligence may be defined to be the want of ordinary diligence, &c." *Story on Bailment, chap.* 1, *page* 19 *sec.* 17, 3*d edi.;* and *page* 390, *sec.* 399, it is held, that " the hirer of a thing is only ' responsible for that degree of diligence which the ' generality of mankind use in keeping their own ' goods of same kind;" on *page* 399, *sec.* 405, it is held, " that the true extent of the duty and diligence ' required of the hirer, in the care and custody of the ' thing hired, must essentially depend upon the na- ' ture and character of that thing, and its liability to ' loss or injury."

Taking this case in its strongest light against the appellant, that he is a bailee for hire, and apply the principles to the evidence, he could not be liable for damages, it must therefore be that the jury were mislead by the instructions of the circuit judge, which were different, and, as contended, erroneous.

The evidence contained in the record conduces to prove that the appellant kept the Jack in 1849; that the Jack was docile, gentle, and easily managed; that while taking him, at the close of the season, back to appellee, by the usual route, he stopped at the house of a friend, and there tied the Jack to the limb of a hickory tree, inside of a lot where there were no horses, forty or fifty steps from the road, and by some means—probably by his rearing and falling— he was killed. Was there a want of *ordinary diligence,* and such as is required by the rule of law, *supra,* in thus tying the Jack? It is not a question of prudence or imprudence, but would not men *ordinarily* have done the same thing? Witnesses both for appellant and appellee say they most likely would. Wherefore we think that a new trial ought to have been granted. A reversal is repectfully asked.

*Grider & Rhodes* for appellee—

Argued—The circuit judge properly overruled the demurer to the declaration, as it contains the ordina-

ry form of counts against a bailee for *a consideration*, found in *Chitty's Pleading*. The meaning of the word *farm* is known to the court—it means, to *let*, to *demise*, to *farm let*, to convey for a term of time on the shares; that the *farmee* shall return or render to the owner a proportion or part of the proceeds or produce of the thing or object let and farmed; which significations imply *a consideration*. "Farm, or *feorme*, ' is an old saxon word, signifying provision, and it ' came to be used, instead of rent or render, because. ' anciently the greater part of rents were reserved in ' provisions, in corn, in poultry, and the like, 'till the ' use of money became more frequent." *Blackstone's Com. vol.* 2, *side page* 318.

It is not material, in this character of action, *how much* the consideration was; it is only material that there was *a* consideration, which being, as we think, sufficiently alledged, it devolved on the bailee to take such care of the Jack as any *prudent man* commonly takes of *his own goods* of like kind.

There is we think no difference between the care required of a *prudent man* and of a *man of common discretion*, and we regard the law on this point as having been properly ruled by the circuit judge.

The evidence of a former keeper shows the Jack to have been vicious; the evidence of keepers of other Jacks shows that they never tied one out in an exposed place, one hundred and fifty yards from a house, near the junction of the public roads, as was the fact in this case. The simple fact that *no* one ever had done so, is conclusive against the *prudence* and propriety of the act. *No one* witness says he would have so tied the Jack, nor that it was customary, nor that it was safe; on the contrary, that the practice was otherwise. No one ever saw this Jack in an exposed place, so tied unless the keeper was at hand, or the Jack otherwise guarded.

We believe the jury rightly determined the case, and the count properly ruled the law. Whereupon we respectfully ask an affirmance.

JACKSON
vs.
ROBINSON.

13th JANUARY,
1852.

Chief Justice HISE delivered the opinion of the court.

J. Robinson, the plaintiff, sued F. W. Jackson in an action upon the case to recover the value of his Jack, Dallas, then in the possession of the defendant, upon a contract for the mutual benefit of the parties, alledging, in his declaration, that the defendant negligently and improperly fastened the Jack with a halter to the limb of a tree, in a place where he might be excited or frightened by the presence or sight of other stock passing, and that the defendant left him, leaving no one in charge to watch him, and, if necessary, to protect him from injury; and that the Jack, in strugling to get loose, broke the limb to which he was tied, dashed his head against the trunk of the tree, and was so injured that he died instantly. The defendant demurred to the declaration, and plead not guilty, and there was a trial and verdict and judgment in favor of the plaintiff for the sum of $250 damages, and cost of suit.

The demurrer to the declaration was properly overruled. The several counts therein each set forth, substantially, a good cause of action, and it was not necessary that the precise terms or consideration of the contract between the parties, by which the defendant acquired the possession and use of the Jack for the season, should have been stated; enough was set out to show that it was an arrangement made for the mutual benefit of the parties, so as to furnish the ground upon which the defendant's responsibility would rest, should the proof correspond with the facts as laid. The second and third counts each presented appropriately enough a state of fact which, if proved would make the responsibility of defendant depend on different principles.

The proof having been heard, it seems that the court refused to give the instructions asked by the attorneys of both plaintiff and defendant, and presented what was supposed to be the law of the case in instructions No. 1, and No. 2, which were given in lieu of the others. The rejected instructions are

not copied in the record, so that it cannot be assumed that the court below erred in refusing to give them; but the two instructions that were given were missleading, and did not present, accurately, the principle of law upon which the plaintiff's right to recover depended.

By them the jury were told, in substance, that they should find for the plaintiff if defendant was guilty of greater negligence than a *prudent* man would be ordinarily guilty of, or, in other words, that unless defendant exercised the same care and diligence which would *ordinarily* be exercised by a *prudent*, discreet, man, he would be responsible. The law is different as applicable to the facts as avered and proved. In cases where the bailee has possession of property of the bailor, on hire, or under a contract for the profit and advantage of both parties, as in this instance, if the property should be injured or destroyed the bailee would not be responsible, because he did not take as *good care*, and observe as *much diligence* for its preservation, as would be taken and observed, *commonly*, by *prudent men*.

This degree of diligence and care could only be required in cases where the bailee had possession of the property of the plaintiff, upon terms exclusively advantageous to himself.

The defendant in this case should not be held responsible to plaintiff for the value of the Jack, Dallas, if he used as much care and diligence for his safety as is usual with the common run of men, or with men of *ordinary discretion*, in managing their own property.

Therefore, because the court below erred in giving the instructions No. 1, and No. 2 to the jury, because the jury may have been missled thereby, and because the motion for a new trial was erroneously overruled, the judgment of the circuit court is reversed, and cause demanded that a new trial may take place, and for further proceedings in conformity with this opinion.

JACKSON
*vs.*
ROBINSON.

1. Bailee in possession of property for joint profit and advantage of himself and bailor, in case of injury or destruction thereof, is not responsible therefor, because he did not take as *good care* and observe *as much diligence*, as would be taken or observed *commonly* by *prudent men*; such bailee is only bound to use such care and diligence as is usual with the common run of men, or with men of *ordinary discretion* in the use of their own property *aliter*, when the possession was for the *exclusive advantage* of bailee.